**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| JUSTIN ORLANDO, | : | CIVIL CASE NO. |
| Plaintiff, | : | 3:22-CV-01636 (JCH) |
|  | : |  |
| v. | : |  |
|  | : |  |
|  | : |  |
| KRAFT HEINZ COMPANY, | : | SEPTEMBER 27, 2024 |
| Defendant. | : |  |
|  | : |  |

**RULING ON MOTIONS FOR SUMMARY JUDGMENT (DOC. NOS. 106 & 111) AND
MOTIONS TO SEAL (DOC. NOS. 107 & 115)**

## I.    INTRODUCTION

Plaintiff Justin Orlando ("Mr. Orlando") brings this action against his former

employer, the Kraft Heinz Company ("Kraft Heinz" or "the Company"), alleging

retaliation in violation of section 31-51q of the Connecticut General Statutes.  See First

Amended Complaint ("Am. Compl.") (Doc. No. 17).  Before the court are the parties'

cross Motions for Summary Judgment.  See Kraft Heinz's Motion for Summary

Judgment ("Def.'s Summ. J. Mot.") (Doc. No. 106); Orlando's Motion for Partial

Summary Judgment ("Pl.'s Summ. J. Mot.") (Doc. No. 111).  In addition, both parties

have filed related Motions to Seal.  See Kraft Heinz's Motion to Seal (Doc. No. 107);

Orlando's Motion to Seal (Doc. No. 115).  Kraft Heinz's Motion for Summary Judgment

seeks to close the case; Mr. Orlando's Motion for Summary Judgment is partial, i.e., it

would only resolve his claim to the extent it stands on his 2022 speech.

For the reasons stated below, the court grants in part and denies in part Mr. Orlando's Motion for Summary Judgment, Kraft Heinz's Motion for Summary Judgment, and Kraft Heinz's Motion to Seal; and grants Mr. Orlando's Motion to Seal.

## II.   BACKGROUND

### A.  Factual Background[1]

Mr. Orlando, an at-will employee of Kraft Heinz since March 2020, was promoted to Associate Director of the Metro Area in 2022.  Pl.'s 56(a)(2) Stmt at ¶¶ 7, 9.  Upon being promoted, he reported to the Customer Vice President of Regional Grocery East, Allison Phillips, who in turn reported to the Area Vice President, Amy Bosek ("Ms. Bosek").  Id. at ¶ 9.  As an Associate Director, Mr. Orlando was: (1) "responsible for maintaining and growing approximately $350 million in sales between Kraft Heinz and its business partners", id. at ¶ 10, and (2) "leading a [racially diverse] team of approximately seven individuals."  Id. at ¶ 11.

In 2021, Mr. Orlando campaigned for a seat on the Board of Education of Monroe, Connecticut.  See Def.'s 56(a)(2) Stmt at ¶ 1; Pl.'s 56(a)(2) Stmt at ¶ 16.

---

[1] As it must, the court construes all disputed facts in the light most favorable to the non-moving party.  It notes where the parties disagree.

Addressed in this Ruling are cross motions, thus there are two non-moving parties.  The court sought to carefully review the record to determine the undisputed facts to be relied on in deciding each motion.  Where a denial is unsupported by the evidence, the court deems the moving party's factual assertion admitted to the extent it is supported by admissible evidence.  If the evidence supports the opposing party's denial of a material fact, it will not be treated as established.

The court draws primarily from the parties' Local Rule 56(a) Statements and supporting Exhibits in summarizing the material facts.  In addition, for ease of reference, the court cites to the parties' Local Rule 56(a)2 Statements because, in accordance with Local Rule 56(a)2, they contain a reproduction of each numbered paragraph from the moving party's Local Rule 56(a)1 Statement, as well as the nonmoving party's admissions and denials.

During this time, several news outlets reported that Mr. Orlando had worn "blackface" as part of a 2018 Halloween costume.[2]  Pl.'s 56(a)(2) Stmt at ¶ 16.  Mr. Orlando issued a statement in response.  Pl.'s 56(a)(2) Stmt at ¶ 17; Def.'s 56(a)(2) Stmt at ¶ 1.  In the statement, which was published by the local news, Mr. Orlando claimed that he did not view the costume as implicating "a racial decision", see Def.'s Ex. 11, Orlando's Statement Attachment to the Article from the Monroe Sun ("Orlando's Public Statement") (Doc. No. 106-11) at 5, and instead, thought the costume "demonstrat[ed] respect for" a television character, Ricardo Tubbs.[3]  See id.

On or about August 30, 2022, Kraft Heinz conducted a "New Leadership Assimilation Workshop for [Mr. Orlando]"; it was led by Julia Plecque ("Ms. Plecque"), Human Resources Business Partner of Sales, and Kathleen Frost ("Ms. Frost"), Senior Human Resources Analyst of Sales.  Pl.'s 56(a)(2) Stmt at ¶¶ 12–13; Def.'s 56(a)(2) Stmt at ¶ 1.  Kraft Heinz commonly conducts such workshops for managers when they "take on new teams."  Pl.'s 56(a)(2) Stmt at ¶ 13.  During the workshop, Mr. Orlando shared that he was a member of the Board of Education of Monroe, Connecticut.  Pl.'s

---

[2] Mr. Orlando denies that his Halloween costume constitutes "blackface" "within the meaning of the "contested historical term".  See Pl's 56(a)(2) Stmt at ¶ 15 (citing Pl.'s Opp'n Ex. 3, Deposition Transcript of Justin Orlando ("Orlando Dep.") (Doc. No. 117-3) at 173–74).  The court notes that Mr. Orlando makes this denial in response to the defendant's Statement that Kathleen Frost informed Julia Plecque about the contents of news articles, namely, that Mr. Orlando had worn "blackface."  See Def.'s 56(a)(1) Stmt at ¶ 15; Pl.'s 56(a)(2) at ¶ 16 (admitting that news outlets had reported Mr. Orlando wore "blackface.").  Thus, the meaning of the term blackface is not at issue in this Statement because the defendant is not asserting that the costume is, in fact, blackface.  As such, the entirety of the defendant's Statement is deemed admitted.  It bears further emphasis that the testimony cited to by Mr. Orlando does not support his denial.

[3] Philip Michael Thomas played Ricardo Tubbs on the television show Miami Vice.  Mr. Thomas is of "African-American ancestry."  Philip Michael Thomas, Turner Classic Movies https://www.tcm.com/tcmdb/person/191165%7C0/Philip-Michael-Thomas#biography (last visited Sept. 27, 2024).

56(a)(2) Stmt at ¶ 14; Def.'s 56(a)(2) Stmt at ¶ 1.  Curious as to Mr. Orlando's

background, Ms. Frost searched his name on the internet and discovered news articles

reporting that Mr. Orlando had worn "blackface" as part of a Halloween costume.  Pl.'s

56(a)(2) Stmt at ¶ 15; Def.'s 56(a)(2) Stmt at ¶ 1.

Ms. Plecque reported Ms. Frost's findings to Kraft Heinz's Ethics and Compliance

Department, which, consistent with its practice, assigned Associate General Counsel

William Novak ("Mr. Novak") to investigate.[4]  Pl.'s 56(a)(2) Stmt at ¶¶ 18–19; Def.'s

56(a)(2) Stmt at ¶ 3.   Mr. Novak's responsibilities "include assessing risk to Kraft

Heinz's customers, employees, and reputation based on violations of [the Company's]

Code of Conduct and policies."  Pl.'s 56(a)(2) Stmt at ¶ 20.

On September 15, 2022, Mr. Novak interviewed Mr. Orlando via videoconference

and Ms. Plecque attended the meeting to take notes.  Pl.'s 56(a)(2) Stmt at ¶ 22; Def.'s

56(a)(2) Stmt at ¶ 3.  Mr. Novak asked Mr. Orlando about the costume.  See Pl.'s

56(a)(2) Stmt at ¶ 24; Def.'s 56(a)(2) Stmt at ¶ 3.[5]  During the interview, Mr. Orlando

admitted to wearing the costume at issue and claimed that the news articles related to

the incident were a part of a smear campaign intended to thwart his bid for local office.

---

[4] Kraft Heinz notes that Mr. Orlando incorrectly identified Mr. Novak as the "[H]ead of [I]nternal [I]nvestigations" in his 56(a)(1) Statement.  Def.'s 56(a)(2) Stmt at ¶ 3.

[5] Mr. Orlando also asserts, in his 56(a)(1) Statement, that Mr. Novak asked him about his 2021 statements to the media.  In support of this assertion, he cites, inter alia, Ms. Bosek's deposition testimony, where she testified that Mr. Novak said Mr. Orlando "acknowledge[ed]" "the article" during the interview.  Pl.'s 56(a)(1) Stmt at ¶ 3 (citing Pl.'s Opp'n Ex. 1, Deposition Transcript of Amy Bosek ("Bosek Dep.") (Doc. No. 112-1) at 172).  The defendant denies Mr. Orlando's assertion by citing Mr. Novak's deposition testimony.  Def.'s 56(a)(2) Stmt at ¶ 3. (citing, inter alia, Deposition Transcript of William Novak Supplement ("Novak Dep. Supp.") (Doc. No. 119-3) at 51:3–13).  The evidence in the record reveals that Mr. Novak did not recall whether he asked Mr. Orlando about his 2021 statements.  Def.'s Ex. 29, Novak Dep. Supp. at 51:3–13.  Accordingly, for the purpose of Mr. Orlando's Summary Judgment Motion, the court accepts as fact that Mr. Novak did not ask Mr. Orlando about his 2021 statements.

Def.'s Ex. 19, Plecque Notes at 1; <u>see</u> Pl.'s 56(a)(2) at ¶ 23.  Mr. Orlando also claimed during the interview that, while he darkened his complexion, he lacked the malintent supposedly required to wear blackface.  <u>See</u> Def.'s Ex. 19, Plecque Notes at 2; Pl.'s 56(a)(2) at ¶ 34.  He said further that, at the time, it had not occurred to him that his conduct had racial or negative undertones, Pl.'s 56(a)(2) Stmt at ¶ 26, but said he would not wear the costume again because of, <u>inter alia</u>, the negative impact the news coverage had on him and his family.  <u>Id.</u> at ¶ 28.[6]

During this interview, Mr. Novak asked Mr. Orlando how he would explain his decision to wear the Halloween costume to an employee.  <u>See id.</u> at ¶ 29.[7]  Mr. Orlando replied that he would explain his "position" on the matter and expected his employee would understand that Mr. Orlando was not racist, having worked with him before.  <u>See id</u>;  Mr. Novak also asked Mr. Orlando whether he thought the costume reflected poorly on the company because Mr. Orlando had used his LinkedIn photo, which tied Mr. Orlando to Kraft Heinz, in his election campaign.  <u>Id.</u> at ¶ 32.  Mr. Orlando responded that he did not think Kraft Heinz was negatively implicated because, among other reasons, if people got to know him, they would understand who he really is.  <u>Id.</u>  Mr. Novak observed that Mr. Orlando had completed Kraft Heinz's "dignity and respect"

---

[6] Mr. Orlando asserts that, during the interview, he stated that "he understood the perspective of the people who criticized the costume and understood that the costume could be perceived in a negative light."  <u>See</u> Pl's 56(a)(2) Stmt at ¶ 28.  In support, Mr. Orlando cites to the notes taken during the interview by Mr. Novak and Ms. Plecque.  <u>See id.</u> (citing Def.'s Ex. 18, Novak Notes (Doc. No. 106-18) at 1–2).  However, the evidence on which Mr. Orlando relies does not support his assertion.

[7] Kraft Heinz's 56(a)(1) Statement, and Mr. Orlando's 56(a)(2) Statement discuss what Mr. Orlando said during his interview with Mr. Novak, and Mr. Novak and Ms. Plecque's conclusions from the investigation.  <u>See e.g.</u>, Pl.'s 56(a)(2) at ¶¶ 23–25.  Mr. Orlando's 56(a)(1) Statement, and Kraft Heinz's 56(a)(2) Statement discuss what Ms. Bosek learned about the interview and investigation.  <u>See e.g.</u>, Def.'s 56(a)(2) Stmt at 4–9.  Accordingly, the court discusses each separately.

training shortly before Mr. Orlando issued his statement to the press, in response Mr. Novak recorded Mr. Orlando as saying, "when we look at the training, I do nothing but live up to Kraft Heinz's values."  Id. at ¶ 33; Def.'s Ex. 19, Plecque Notes at 2.

Following the interview, Mr. Novak was concerned about the potential impact of Mr. Orlando's conduct on Kraft Heinz's employees, customers, and reputation.  Pl.'s 56(a)(2) at ¶ 35.  He and Ms. Plecque were troubled that, in their view, Mr. Orlando did not understand how his actions might imperil the company's relationships with these constituents.  See id. at ¶¶ 36–38.  Instead, Mr. Novak thought that Mr. Orlando was only concerned about how the costume, and subsequent criticism, impacted himself and his family.[8]  Id. at ¶ 37.

On September 20, 2022, Mr. Novak met with Mr. Orlando once more.  Id. at 45. The meeting came about after Mr. Orlando spoke with Ms. Bosek about the September 15 interview, telling her that it did not go well.  Id. at ¶ 39.  Ms. Bosek encouraged Mr. Orlando to schedule a follow-up meeting with Mr. Novak to share anything else Mr. Orlando wished to say regarding the investigation, which Mr. Orlando did.  Id. at ¶¶ 39, 44.  During the meeting with Mr. Novak, Mr. Orlando reiterated that he did not intend to offend anyone by wearing the costume and that he felt he was living up to the Kraft Heinz values.  See id. at ¶¶ 46–47.

At the close of his investigation, Mr. Novak concluded that Mr. Orlando's continued employment risked the company's relationship with its employees, and

_____

[8] While Mr. Orlando accepts the characterizations discussed in this paragraph as being accurate, he notes that Mr. Novak and Ms. Plecque were not responsible for deciding whether Mr. Orlando should be terminated.  Pl.'s 56(a)(2) Stmt at ¶¶ 35–39.

customers, and could tarnish the company's reputation.[9]  Id. at ¶ 54.  Mr. Novak based

this conclusion on Mr. Orlando's failure to grasp the negative impact that his costume

might have on others.[10]  See id. at ¶¶ 52–53.  Mr. Novak shared his findings with Ms.

Bosek.  Id. at ¶ 55.

Ms. Bosek was made aware of certain information that surfaced during Mr.

Novak's investigation.[11]  See Pl.'s 56(a)(2) Stmt at ¶¶ 51, 55.  Mr. Orlando explained

that he attended a Halloween party in 2018 dressed as the television character, Ricardo

Tubbs.  Pl.'s 56(a)(1) Stmt at ¶ 4.  As part of this costume, Mr. Orlando wore skin-

---

[9] Mr. Orlando contends that Mr. Novak's findings and conclusions are not material because Mr. Novak did not decide or offer a recommendation about whether to terminate Mr. Orlando.  See Pl.'s 56(a)(2) Stmt ¶¶ 52–54.  Objections relating to materiality are inappropriate as they plainly contravene the purpose of Local Rule 56(a)(2).  Eiden v. McCarthy, 531 F. Supp. 2d 333, 339 (D. Conn. 2008) ("The purpose of the Rule 56 Statements is to help the court determine the facts of a case, whereas the parties' legal arguments are properly submitted in the memoranda of law.").  Nevertheless, the record does not support Mr. Orlando's contention fully.  While the deposition transcript Mr. Orlando cites to as support for his assertion provides that Ms. Bosek testified no one made a recommendation to her to terminate Mr. Orlando's employment, see Pl.'s Opp'n Ex. 1, Bosek Dep. (Doc. No. 117-1) at 86:2-4, she also noted that the employees involved in the investigation joined her in discussing options for disciplining Mr. Orlando and that she made her decision based on Mr. Novak's investigation, see id. at 86:5-13; Pl's Opp. Ex. 5, Deposition Transcript of Reena Talwar ("Talwar Dep.") (Doc. No. 117-5) at 15:2-20.

[10] Kraft Heinz maintains that Mr. Novak's conclusions were based on Mr. Orlando's 2018 costume and 2022 statements and not on his 2021 comments to the media.  Def.'s 56(a)(1) Stmt at ¶ 51.  Mr. Orlando responds that his 2021 statements did play a role in Mr. Novak's conclusions, citing Mr. Novak's questions about those statements.  Pl.'s 56(a)(2) Stmt at ¶ 51 (citing Def.'s Ex. 18, Novak Notes at 3 and Def.'s Ex. 19, Plecque Notes at 2).

In deciding Kraft Heinz's Motion for Summary Judgment, the court concludes that there is an issue of material fact as to whether, and to what extent, Mr. Orlando's 2021 statements were considered during the investigation.  See, infra, Section IV.A.

[11] As part of his 56(a)(1) Statement, Mr. Orlando regularly summarizes statements made by Mr. Novak and Ms. Plecque to Ms. Bosek on the basis of deposition testimony from Ms. Bosek that nothing in certain interview notes was a surprise to her.  See Pl.'s 56(a)(1) Stmt at ¶¶ 4–9.  Kraft Heinz takes issue with this approach but confirms that the interview notes are accurate.  See Def.'s Pl.'s 56(a)(2) Stmt at ¶¶ 4–9.

Considering Ms. Bosek's testimony, the court will assume that she was aware of the statements within this paragraph without deciding how she became aware of this information.

darkening makeup.  See id. at ¶ 5, 9.  Mr. Orlando represented that he did not wear the costume intending to malign another race or ethnicity and that he would not wear the costume again because of the negative impact doing so had on his family.  Id. at ¶¶ 5, 7; Pl.'s 56(a)(2) Stmt at ¶¶ 52–53, 55.  Mr. Orlando maintained that he did not wear "blackface" because he lacked malintent in wearing the costume.  Pl.'s 56(a)(1) Stmt at ¶ 9. More generally, Mr. Orlando asserted that he is not racist.  Id. at ¶ 8.  During the interview, Mr. Orlando explained that media outlets reported about his 2018 costume in connection with his run for a seat on the local school board.  Id. at ¶ 6.

Ms. Bosek sent Ms. Plecque a text message seeking advice about how to handle the situation.  Pl.'s 56(a)(2) at ¶ 41; Pl.'s Ex. 19, Def.'s Ex. 22, Text Conversation Between Bosek and Plecque ("Bosek & Plecque Texts") (Doc. No. 106-22) at 1.  The parties offer differing characterizations of the text message exchange.[12]  The record reveals, however, that Ms. Bosek asked Ms. Plecque whether it would be appropriate to "put [Mr. Orlando] through a [diversity and inclusion] program."  Pl.'s Ex. 19, Def.'s Ex. 22, Bosek & Plecque Texts at 1.  Ms. Plecque responded that Mr. Orlando had taken the "dignity and respect training less than a month before he made comments to the media" and that "it took [Mr. Novak] making clear [Mr. Orlando's] job was at stake" for Mr. Orlando to express remorse.  Id. at 3.  Ms. Plecque also cautioned that the company could have to justify Mr. Orlando's continued employment with Kraft Heinz to employees

_____

[12] Kraft Heinz asserts, "Ms. Plecque suggested Ms. Bosek focus on the employee, customer and reputation lenses."  Def.'s 56(a)(1) Stmt at ¶ 42 (citing Def.'s Ex. 22, Bosek & Plecque Texts).  Mr. Orlando responds by denying that the texts depict Ms. Plecque "suggest[ing] what Ms. Bosek should 'focus on' or [that Ms. Plecque] mentioned Kraft Heinz's 'reputation.'"  Pl.'s 56(a)(2) Stmt at ¶ 42.

or customers and that Mr. Orlando's 2021 statements "to [the] media do not help."  Id. at 1–2.[13]

The decision of how to discipline Mr. Orlando was left to Ms. Bosek, who decided that Mr. Orlando should be terminated because of the statements he made during the 2022 investigation.  Def.'s 56(a)(2) Stmt at ¶¶ 10–11; see Pl.'s 56(a)(2) Stmt at ¶ 56.  Ms. Bosek concluded that Mr. Orlando had violated Kraft Heinz's Code of Conduct and Leadership Principles by failing to understand how the costume might negatively impact others.  Pl.'s 56(a)(2) Stmt at ¶¶ 57–58.  Ms. Bosek helped to prepare a termination letter addressed to Mr. Orlando.  Id. at ¶ 59; Def.'s 56(a)(2) Stmt at ¶ 14.  The letter read, in pertinent part:

> Kraft Heinz investigated concerns brought to our attention regarding your social media conduct in 2018 and subsequent media response in 2021. During the investigation, you failed to acknowledge your conduct, specifically appearing in blackface, to be offensive. Your unwillingness to acknowledge and take ownership of the inappropriateness and offensiveness of this conduct is contrary to our leadership principles and violative of our Code of Conduct. As a result, your employment with Kraft Heinz is terminated[.]

Def.'s Ex. 27, Termination Letter (Doc. No. 106-26) at 1; Def.'s 56(a)(2) Stmt at ¶ 15.

No one with whom Mr. Orlando regularly worked complained about the conduct at issue in the investigation, and members of Mr. Orlando's team "felt like they were seeing progress[.]"  Def.'s 56(a)(2) Stmt at ¶¶ 19–20 (quoting Pl.'s Mem. Supp. Ex. 1, Deposition Transcript of Amy Bosek ("Bosek Dep.") (Doc. No. 112-1) at 127:14–15).  Mr. Novak did not interview Mr. Orlando's direct reports about this matter.  Id. at ¶ 22.  At the

---

[13] The parties agree that the text messages summarized in this paragraph are accurate.  Pl.'s 56(a)(2) Stmt at ¶ 41.

time Mr. Orlando was terminated, Ms. Bosek was unaware of any customers who complained of Mr. Orlando's 2018 costume.  Id. at ¶ 24; Pl.'s Mem. Supp. Ex. 1, Bosek Dep. at 123:11–21.  The company is unable to estimate the likelihood that customers might discover information about Mr. Orlando's Halloween costume and stop doing business with it as a result.  Def.'s 56(a)(2) Stmt at ¶ 25.[14]

B. <u>Procedural Background</u>

Mr. Orlando initiated this action against Kraft Heinz on December 23, 2022.  <u>See</u> Complaint ("Compl.") (Doc. No. 1).  Approximately two months later, on February 16, 2023, Mr. Orlando filed his Amended Complaint.  <u>See</u> Am. Compl.  On March 9, 2023, Kraft Heinz filed its Answer and Defenses.  <u>See</u> Answer & Defenses (Doc. No. 22).  On February 28, 2024, Kraft Heinz and Mr. Orlando filed cross Motions for Summary Judgment.  <u>See</u> Def.'s Summ. J. Mot.; Kraft Heinz's Memorandum in Support of its Motion for Summary Judgment ("Def.'s Mem. Supp.") (Doc. No. 106-1); Pl.'s Summ. J. Mot.; Orlando's Memorandum in Support of his Motion for Summary Judgment ("Pl.'s Mem. Supp.") (Doc. No. 112).  The parties filed respective Opposition and Reply Memoranda. Orlando's Memorandum in Opposition to Kraft Heinz's Motion for Summary Judgment ("Pl.'s Opp'n") (Doc. No. 117); Kraft Heinz's Memorandum in Opposition to Orlando's Motion for Partial Summary Judgment ("Def.'s Opp'n") (Doc.

---

[14] The plaintiff further asserts that Ms. Bosek cannot conclude it was objectively reasonable to think that a customer might terminate its business with Kraft Heinz, Pl.'s 56(a)(1) Stmt at ¶ 26, however, Kraft Heinz challenges this assertion.  Def.'s 56(a)(2) Stmt at ¶ 26.  The testimony that the plaintiff cites does not support this proposition.  <u>See</u> Pl.'s 56(a)(1) Stmt at ¶ 26 (citing Pl.'s Mem. Supp. Ex. 1, Bosek Dep. at 123–24).  The excerpt of the Bosek deposition on which Mr. Orlando relies shows Mr. Orlando's counsel asked Ms. Bosek a compound question; her single word response cannot stand for the proposition now at issue.  <u>See</u> Pl.'s Mem. Supp. Ex. 1, Bosek Dep. at 123:22–124:5.

No. 119); Orlando's Reply to Kraft Heinz's Opposition ("Pl's Reply") (Doc. No. 124); Kraft Heinz's Reply to Orlando's Opposition ("Def.'s Reply") (Doc. No. 125).

### III.   LEGAL STANDARD

A motion for summary judgment may be granted only when the moving party can establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71-72 (2d Cir. 2016). If the moving party satisfies this burden, the nonmoving party must set forth specific facts demonstrating that there is indeed "a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). A genuine issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Cross Com. Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016). Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).

When, as here, both parties come before the court on cross-motions for summary judgment, the court is not required to grant judgment as a matter of law for either side. See Ricci v. DeStafano, 530 F.3d 88, 109-10 (2d Cir. 2008). "Rather the court must evaluate each party's motion on its own merits, taking care in each instance

11

to draw all reasonable inferences against the party whose motion is under consideration."  Id. at 110.

## IV.  DISCUSSION

### A.  <u>Cross Motions for Summary Judgment Involving Mr. Orlando's Statements in 2021 and 2022</u>

Kraft Heinz moved for summary judgment, asserting that Mr. Orlando cannot establish a <u>prima</u> <u>facie</u> claim that his 2022 speech was protected and further claims that it had a legitimate, non-retaliatory reason, for terminating Mr. Orlando.  <u>See</u> Def.'s Mem. Supp. at 13–18.  Mr. Orlando opposes both arguments.  <u>See</u> Pl.'s Opp'n at 1–4.  Mr. Orlando cross moves for summary judgment on his cause of action based on his 2022 speech, arguing that he has established a <u>prima</u> <u>facie</u> claim, and asserts that there is not a material issue of fact on which a juror could find that Mr. Orlando's statements interfered with its business.  <u>See</u> Pl.'s Mem. Supp. at 9–24.  Kraft Heinz opposes both arguments.  <u>See</u> Def.'s Opp'n at 6–20.  The court notes that, "for the purposes of [Mr. Orlando's] [M]otion for [S]ummary [J]udgment, [he] focuses only on" "his actions during the 2022 investigation[.]"  Pl.'s Mem. Supp. at 10–11; Pl.'s Mem. Supp. at 14 (arguing that Mr. Orlando was terminated because he failed to make certain statements during the 2022 investigation).  He did not move for summary judgment on his 2021 speech, separate from how the 2021 speech was discussed during the 2022 investigation.  <u>See</u> Pl.'s Mem. Supp. at 10–14.

Claims brought under section 31-51q of the General Statutes of Connecticut are analyzed using the <u>McDonnell Douglas</u> burden shifting framework.  <u>See</u> <u>Sanchez v. Connecticut Nat. Gas Co.</u>, 421 F. App'x 33, 34 (2d Cir. 2011); <u>Neal v. Specialty Cable</u>

*Corp.*, No. 3:21CV00497(SALM), 2022 WL 4584082, at *2 (D. Conn. Sept. 29, 2022).

Accordingly, the plaintiff must establish a prima facie claim.  *Sanchez*, 421 F. App'x at

35; Blue v. City of New Haven, No. 3:16-cv-1411 (MPS), 2019 WL 399904, at *8 (D.

Conn. Jan. 31, 2019).  The plaintiff bears this burden regardless of whether he has

moved for, or opposes, summary judgment.  See, e.g., Casseus v. Verizon N.Y., Inc.,

722 F. Supp. 2d 326, 335-36 (E.D.N.Y. 2010) (in ruling on cross motions for summary

judgment as to the plaintiff's claim of workplace retaliation, the court examined whether

the plaintiff made a prima facie case under McDonnell Douglas). If the plaintiff makes a

prima facie claim, "the defendant has the opportunity to demonstrate by a

preponderance of the evidence that it would have undertaken the same adverse

employment action even in the absence of the protected conduct."  Matusick v. Erie

Cnty. Water Auth., 757 F.3d 31, 47 (2d Cir. 2014).  If the defendant articulates a non-

retaliatory reason for terminating the employee, "[t]he plaintiff must then . . . [explain

why the] non-retaliatory reason is a mere pretext for retaliation."  Zann Kwan v. Andalex

Grp. LLC, 737 F.3d 834, 845 (2d Cir. 2013).

      1.     Prima Facie Claim

To establish a prima facie claim under section 31–51q of the General Statutes of

Connecticut, Mr. Orlando must show "(1) that [ ]he engaged in constitutionally protected

speech, (2) that h[is] employer took an adverse action against h[im], and (3) that there

was a causal relationship between the protected activity and the adverse action."[15]

---

[15] The defendant may assert that the activity "substantially or materially interfere[d] with the employee's bona fide job performance or the working relationship between the employee and the employer."  General Statutes (Rev. to 2019) § 31-51q; see Michel v. City of Hartford, 226 Conn. App. 98,

Mumma v. Pathway Vet All., LLC, 648 F. Supp. 3d 373, 388 (D. Conn. 2023); Blue, 2019

WL 399904, at *8; Michel v. City of Hartford, 226 Conn. App. 98, 129 (2024). Because

Kraft Heinz does not dispute that it took an adverse action against Mr. Orlando, see

Def.'s Mem. Supp. at 2; Def.'s Opp'n at 12, the court will assume that Mr. Orlando has

satisfied this element of his prima facie claim for the purpose of this Ruling.

          i.      Constitutionally Protected Speech

"A clear prerequisite to the application of § 31–51q . . . is that the speech at issue

must be constitutionally protected[.]" Schumann v. Dianon Sys., Inc., 304 Conn. 585,

600 (2012).  The speech that is the subject of Kraft Heinz's Motion for Summary

Judgment is Mr. Orlando's 2022 speech, only.[16] See Def.'s Mem. Supp. at 14–15.

However, Mr. Orlando, in opposition to Kraft Heinz's Motion, argues both his 2021 and

2022 speech are constitutionally protected.  Pl.'s Opp'n at 9–12.  Mr. Orlando's partial

Motion for Summary Judgment addresses only his 2022 speech.  See Pl.'s Mem. Supp.

at 10–14.

    Mr. Orlando references two instances of speech that he argues are protected by

the Connecticut and U.S. Constitutions.  Pl.'s Opp'n at 7; Pl.'s Mem. Supp. at 10.[17]  The

first instance occurred in 2021, while he was running for local office and, in doing so,

---

129 (2024) ("a plaintiff making a claim pursuant to § 31-51q does not have an affirmative burden to plead noninterference.  Instead, a defendant may raise the issue of interference in a special defense.").

    [16] In that regard, Kraft Heinz's Motion would better be described as a partial Motion for Summary Judgment.  However, to the extent its Motion was intended to reach speech made by Mr. Orlando in 2021, the court will address it.

    [17] In his Memorandum in Support of his Motion for Summary Judgment, Mr. Orlando briefly asserts his 2021 speech is protected, Pl.'s Mem. Supp. at 10, but, as discussed above, see, supra, at Section IV.A.1, he does not otherwise discuss his 2021 speech in the Memorandum, aside from how it relates to his 2022 statements.

issued a public statement after local news outlets reported that he had darkened his complexion as part of a Halloween costume.  Pl.'s Opp'n at 7; see Pl.'s Mem. Supp. at 10.  The second instance occurred in 2022, while Mr. Orlando spoke with fellow Kraft Heinz employees about his views as to whether wearing the costume was offensive. Pl.'s Opp'n at 8; Pl.'s Mem. Supp. at 11–13.  In its Memorandum in Support of its Motion for Summary Judgment, Kraft Heinz does not argue that Mr. Orlando's 2021 speech is unprotected, see Def.'s Mem. Supp. at 14–15 (claiming that Mr. Orlando's Halloween costume and 2022 statements are not protected but not mentioning Mr. Orlando's 2021 statements).  Accordingly, the court will assume—for the purpose of issuing this Ruling—that Mr. Orlando's 2021 speech is protected.

Turning to Mr. Orlando's 2022 statements, a claim under section 31-51q invokes different analyses depending on whether the claim arises under the Connecticut or U.S. Constitutions.  See Trusz v. UBS Realty Invs., LLC, 319 Conn. 175, 216–17 (2015). Claims based on First Amendment protections are considered under Garcetti v. Ceballos, 547 U.S. 410 (2006), which instructs that, as a threshold matter, an employee's comments made pursuant to his job duties are not constitutionally protected.[18]  See Garcetti, 547 U.S. at 421 ("when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications

---

[18] While Garcetti involved a public employee, Garcetti, 547 U.S. at 410, it applies with equal force to private employees asserting claims under section 31-51q of the General Statutes of Connecticut. Schumann, 304 Conn. at 611 ("we conclude that the rule in Garcetti, applies to claims under § 31–51q grounded in the first amendment that are brought against private employers, and must be considered as a threshold matter[.]" (citation omitted)).

15

from employer discipline."); Trusz, 319 Conn. at 185.  Claims based on the Connecticut Constitution, however, are evaluated under a different standard that begins with the threshold question of whether an employee's speech was made pursuant to his job duties about "official dishonesty, deliberately unconstitutional action, other serious wrongdoing, or threats to health and safety[.]"  Trusz, 319 Conn. at 204 (quoting Garcetti, 547 U.S. at 435 (Souter, J., dissenting)).  The court will apply each standard in turn.

"Whether an employee spoke solely as an employee and not as a citizen is largely a question of law for the court."  Jackler v. Byrne, 658 F.3d 225, 237 (2d Cir. 2011).  In considering the question, "[t]he key inquiry is 'whether the speech activity stemmed from and [was of] the type . . . that [the employee] was paid to do,' and 'the ultimate question in determining whether speech falls within an employee's official duties is whether the employee speaks as a citizen or instead as a[n] [ ] employee.'" Schumann, 304 Conn. at 614 (quoting Rohrbough v. University of Colorado, 596 F.3d 741, 746 (10th Cir.2010); and citing Jackler, 658 F.3d at 237)).  Here, the record before the court shows evidence that Mr. Orlando's speech was made pursuant to his job duties.  Mr. Orlando's duties included "maintaining and growing approximately $350 million in sales between Kraft Heinz and its business partners", see Pl.'s 56(a)(2) Stmt ¶ 10, and (2) "leading a [racially diverse] team of approximately seven individuals", id. ¶ 11; Def.'s Ex. 2, Orlando Dep. At 159:7–19;[19] Def.'s Ex. 21, Orlando Resume (Doc. No. 106-21).  Kraft Heinz opened the investigation at issue as part of its pro forma process

---

[19] Mr. Orlando does not discuss his job description in his 56(a)(1) Statement.

for responding to ethics and compliance complaints, Pl.'s 56(a)(2) Stmt at ¶ 19, and Mr. Novak, who is responsible for assess risk to the company's customers, employees, and reputation, undertook the investigation.  Id. at 19–20.

In support of his Motion for Summary Judgment, Mr. Orlando argues that his official job description does not include participating in an internal investigation, which means he must not have been acting in his official capacity.  See Pl.'s Reply at 5.  The court's inquiry requires more than simply reviewing the employee's job description, however.  In fact, Garcetti "caution[s] courts against construing a[n] . . . employee's official duties too narrowly", Weintraub v. Board of Educ. Of City School Dist. Of City of New York, 593 F.3d 196, 202 (2d Cir. 1010), and noted that "[f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform[.]"  Garcetti, 547 U.S. at 424.

Mr. Orlando next argues that it is "irrelevant" that his 2022 statements were made to his employer in private, Pl.'s Mem. Supp. at 12, and argues that Kraft Heinz cannot transform protected speech, his 2021 comments about his decision to darken his completion, into unprotected speech, his 2022 comments on the same topic, by inviting his latter comments while at work.  Pl.'s Reply at 5.  As it relates to his 2022 speech, this set of arguments fails for two reasons.

First, far from being "irrelevant", Pl.'s Mem. Supp. at 12, the context in which Mr. Orlando's comments were made are vital to determining whether his comments are protected under the U.S. Constitution.  This is because "[t]he objective inquiry into whether a[n] . . . employee spoke 'pursuant to' his or her official duties is 'a practical one.'"  Weintraub, 593 F.3d at 202 (quoting Garcetti, 547 U.S. at 424).  Thus, it matters

a great deal that Mr. Orlando made his 2022 statements to Kraft Heinz employees so that Kraft Heinz could evaluate his fitness to manage employees and the business risk that his continued employment might pose.

Second, Kraft Heinz does not "transform" Mr. Orlando's protected speech because the statements he made in 2021 and 2022 are distinct.  In the former instance, Mr. Orlando was exercising his First Amendment right while speaking as a candidate for office; in the latter instance, Mr. Orlando was not engaging in protected speech while participating in a routine internal investigation undertaken by his employer.  See Garcetti, 457 U.S. at 422.  "Refusing to recognize First Amendment claims based on government employees' work product does not prevent them from participating in public debate.  The employees retain the prospect of constitutional protection for their contributions to the civic discourse."  Id.  Accordingly, the court concludes that Mr. Orlando's 2022 statements made during the Kraft Heinz investigation were made pursuant to his job duties and, therefore, are not protected by the First Amendment.

In support of its Motion for Summary Judgment, Kraft Heinz argues that Mr. Orlando was not speaking on a matter of public concern when speaking as part of the 2022 investigation, but was instead speaking in his capacity as an employee of Kraft Heinz.  See Def.'s Mem. Supp. at 14–15.  Mr. Orlando, in opposing Kraft Heinz's Summary Judgment Motion, argues that his comments regarded an "issue of public concern" and qualify for First Amendment protection.  Pl.'s Opp'n at 8–9.  Garcetti instructs the court to first determine whether Mr. Orlando was speaking pursuant to his job duties as an employee of Kraft Heinz before it may consider whether the speech involved a matter of public concern.  See 547 U.S. at 421 ("The controlling factor in [the

18

plaintiff's] case is that his expressions were made pursuant to his duties").  Having concluded that Mr. Orlando was speaking pursuant to his job responsibilities as an employee of Kraft Heinz, the court's analysis ends there for the purpose of determining whether his speech was protected by the U.S. Constitution.  See id.

Under the Connecticut Constitution, Mr. Orlando's speech, which the court has concluded was made pursuant to his job duties as an employee, see, supra, at 16–18, may still be protected.  To warrant protection under the circumstances of the instant case, the speech must regard a "matter of unusual importance", such as "official dishonesty, deliberately unconstitutional action, other serious wrongdoing, or threats to health and safety", and must be made in satisfaction of a "high standard of responsibility".  Trusz, 319 Conn. at 204, 210–11 (quoting Garcetti, 547 U.S. at 35 (Souter, J., dissenting)).  Mr. Orlando's 2022 speech did not pertain to any of the above categories and did not regard a "matter of unusual importance."[20]  See, e.g., Weicholz v. Dep't of Mental Health & Addiction Servs., 2022 WL 2678893, at *2–3 (Conn. Sup. Ct. July 11, 2022) (concluding that, although the plaintiff claimed that "her speech in reporting to the attending physician her concerns about the information contained in the patient's medical records involve[d] matters of health and safety", her "concerns with a single patient's records . . . do not involve a public concern").  Accordingly, Mr. Orlando's

---

[20] While Mr. Orlando disputes some of Kraft Heinz's characterizations of his 2022 speech, he does not argue that, in 2022, he spoke about these categories in satisfying a "high standard of responsibility."  See Pl.'s Mem. Supp. at 10–13; Pl.'s Reply at 9–10; Pl.'s Opp'n at 8–10.  Instead, he asserts that, pursuant to Trusz, when an employee speaks about a workplace policy, and the employee's duties do not relate to that policy, the speech may warrant protection.  Pl.'s Reply at 9–10.

Critically, the court has already concluded that Mr. Orlando spoke in furtherance of his job responsibilities.  See, supra, at Section IV.A.1.i.

speech during the 2022 investigation is not protected under the Connecticut Constitution.

Mr. Orlando's claim fails to the extent it is based on his 2022 speech because he has failed to come forward with evidence sufficient to establish a prima facie showing of the elements of his cause of action that the speech at issue is protected under the Connecticut or U.S. Constitutions. Therefore, Kraft Heinz's Motion for Summary Judgment as to Mr. Orlando's claim based on his 2022 speech is granted.

ii.   Causal relationship between the protected activity and the adverse action

Assuming for the purposes of Kraft Heinz's Motion that Mr. Orlando's 2021 speech is protected, see, supra, at Section IV.A.1.i, to survive Kraft Heinz's Motion for Summary Judgment, Mr. Orlando has a further prima facie burden to "show that his speech was 'a substantial and motivating factor' in his termination.'" Karagozian v. Luxottica Retail N.A., 147 F. Supp. 3d 23, 33 (D. Conn. 2015) (quoting DiMartino v. Richens, 263 Conn. 639, 670 (2003)). He may satisfy this burden "indirectly, by circumstantial evidence, such as by showing that the protected activity was followed closely in time by adverse treatment in employment." Fasoli v. City of Stamford, 64 F. Supp. 3d 285, 297 (D. Conn. 2014); Cifra v. G.E. Co., 252 F.3d 205, 217 (2d Cir. 2001) ("The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." (internal quotation marks and citations omitted)).

In opposing Kraft Heinz's Motion, Mr. Orlando argues that he was terminated partly because of his public statements issued in 2021, made while he campaigned for a

Monroe Board of Education seat.  See Am. Compl. ¶ 37; Pl.'s Opp. at 2–3, 7.  To

support this assertion, Mr. Orlando notes that Mr. Novak asked him about "his 2021

statement" "repeatedly."  Pl.'s Opp'n at 2 (citing Def. Ex. 18, Novak Notes at 3).[21]  While

Mr. Novak was not ultimately responsible for terminating Mr. Orlando, Mr. Novak

conducted the investigation and kept Ms. Bosek appraised of its developments before

she made the decision to terminate Mr. Orlando.  Id.  The court is also mindful that Ms.

Plecque raised Mr. Orlando's 2021 comments to Ms. Bosek as a point of consideration

when discussing whether Mr. Orlando should be terminated.  Id. (noting that Mr.

Orlando's "statements made to the media do not help" (quoting Pl.'s Ex. 19, Bosek &

Plecque Texts at 1–2)).

        For purposes of summary judgment, "the requisite degree of proof necessary to

establish a prima facie case is minimal", and "does not even need to rise to the level of

a preponderance of evidence[.]"  Fasoli v. City of Stamford, 64 F. Supp. 3d 285, 298 (D.

Conn. 2014).  At this stage of the litigation, Mr. Orlando has come forward with sufficient

evidence to satisfy this minimal burden of suggesting a causal relationship between the

protected activity, his 2021 speech, and the adverse action, his termination, as part of

his prima facie case in opposition to Kraft Heinz's Motion for Summary Judgment.

                2.        Non-Retaliatory Reason for Termination

        Mr. Orlando, having established a prima facie case as to his 2021 comments, the

burden shifts to Kraft Heinz "to articulate some legitimate, non-retaliatory reason for the

employment action."  Zann Kwan, 737 F.3d at 845.  Kraft Heinz asserts that Mr.

_____

        [21] Mr. Orlando cites Def.'s Ex. 7, a copy of the company's Leadership Principles, but it appears he
intended to cite Mr. Novak's notes, which bear the designation: Pl.'s Ex. 7 and Def.'s Ex. 18.

Orlando's conduct violated the Company's policies, raised doubt about his ability to handle future claims of harassment or discrimination, and risked impairing team morale and the company's relationship with clients.  See Def.'s Mem. Supp. at 18–19.  To support its position, Kraft Heinz martials a variety of evidence including Mr. Novak's deposition testimony.  Id. (citing Def.'s Ex. 4, Deposition Transcript of William Novak ("Novak Dep.") (Doc. No. 106-6) at 41:7–16).  In providing this testimony, Mr. Novak repeatedly maintained that Mr. Orlando's 2018 Halloween costume and 2022 comments—not his 2021 statements to the press—caused Mr. Novak to conclude that Mr. Orlando posed a serious risk to the company.  Def.'s Ex. 4, Novak Dep. at 39:4–8, 40:16–19, 40:25–41:16.  Kraft Heinz buttresses its argument by invoking Ms. Bosek's deposition testimony, where she expressed concern about the impact Mr. Orlando's Halloween costume might have on employee morale in addition to risking "millions of dollars of loss" in the event a customer took issue with the display.  Def.'s Mem. Supp. at 17–18 (citing Def.'s Ex. 3, Bosek Dep. at 301–02).

The evidence Kraft Heinz has come forward with articulates a non-retaliatory reason for Mr. Orlando's termination, i.e., that Mr. Orlando's Halloween costume, and his unsatisfactory explanations provided during the 2022 investigation, suggested to Ms. Bosek, among other personnel, that Mr. Orlando's continued employment presented a serious risk to employee morale and client relationships.

### 3.    Pretextual Explanation

Kraft Heinz having met its burden, shifts the burden back to Mr. Orlando to demonstrate that the non-retaliatory reason presented by Kraft Heinz "is a mere pretext for retaliation."  Zann Kwan, 737 F.3d at 845.  Among the evidence cited by Mr. Orlando

to support his assertion that his termination was motivated by his protected speech is Ms. Plecque's text message to Ms. Bosek about his 2021 statements, and Mr. Novak's inquiries into these statements.  Pl.'s Opp'n at 2.  While Ms. Bosek testified that she neither read nor considered Mr. Orlando's 2021 statements, see Def.'s Ex. 3, Bosek Dep. at 96:15, 246:20-23, 247:19-25, 251:11-12, Ms. Bosek also testified that she considered "all of the bullets" in Ms. Plecque's message, Pl.'s Opp'n at 3; Pl.'s Opp'n Ex. 1, Bosek Dep. (Doc. No. 117-1) at 238:18.  These bullets clearly include discussion of the 2021 statements.  Pl.'s Opp'n at 3.  Further, Mr. Orlando has pointed to evidence in the record from which it would be reasonable to conclude that Mr. Novak asked Mr. Orlando why his statement in 2021 did not address the potential impact of the Halloween costume.  Id. at 2–3 (citing Def.'s Ex. 18, Novak Notes at 2).  And while Ms. Bosek testified that neither Mr. Novak nor Ms. Plecque relayed the interview notes to her verbatim, she also testified that nothing contained in the notes surprised her.  See Pl.'s Opp'n Ex. 1, Bosek Dep. at 260:4–262:11.

Considering the evidence presented by Mr. Orlando, it is sufficient for a reasonable jury to find that Kraft Heinz's explanation is pretextual.  The court reaches this conclusion mindful that the Second Circuit has "repeatedly emphasized the need for caution about granting summary judgment to an employer in a discrimination case where . . . the merits turn on a dispute as to the employer's Intent."  Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 101 (2d Cir. 2010) (citation and quotation marks omitted).

Accordingly, Kraft Heinz's Motion for Summary Judgment is denied in part and granted in part.  The Motion is granted as to the claim under section 31-51q based on Mr. Orlando's 2022 speech during the Kraft Heinz's investigation.  To the extent Mr.

23

Orlando's section 31-51q claim is based on his statements in 2021, while he campaigned for a seat on the Board of Education of Monroe, Connecticut, Kraft Heinz's Motion is denied.

Because Mr. Orlando cannot establish that his 2022 speech is protected, an element of a <u>prima</u> <u>facie</u> claim, his Motion for Summary Judgment based on that speech is denied.

B.      <u>Motion for Partial Summary Judgment as to Affirmative Defenses and Damages (Doc. No. 111)</u>

Having denied Mr. Orlando's Motion for Summary Judgment as to his 2022 statements, <u>see</u>, <u>supra</u>, at Section IV.A.1, the court considers the remainder of his Motion.  Mr. Orlando asserts that, first, Kraft Heinz has provided insufficient evidence to support its affirmative defenses; and second, he is entitled to additional damages following revisions to the statute on which his claim is based.  <u>See</u> Pl.'s Mem. Supp. at 9.  The court considers each argument in turn.

1.      Affirmative Defenses

Mr. Orlando asserts that Kraft Heinz has not presented evidence to support its affirmative defenses upon which a reasonable juror could find in its favor.  <u>See</u> Pl.'s Mem. Supp. at 24.  In Opposition, Kraft Heinz argues that Mr. Orlando's assertion is conclusory and does not meet his burden at the summary judgment stage.  <u>See</u> Def.'s Opp'n at 21.  The company further emphasizes portions of the record that offer support to its defenses of after acquired evidence, unclean hands, and failure to mitigate.  <u>See</u> <u>id.</u> at 21–22.

A party moving for summary judgment on an issue for which the nonmoving party bears the burden need not prove a negative.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986); Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001).  That is, the movant need not offer evidence "negating the opponent's claim." See Celotex, 477 U.S. at 323.  When there is no evidence in the record that offers any support for facts material to a claim, the movant must at least sufficiently explain why the evidentiary record is lacking by, for example, showing that there is no evidence that establishes corresponding facts of the claim's requisite elements.  See, e.g., Acquisto v. Manitowoc Co., Inc., 273 F. Supp. 3d 343, 348 (W.D.N.Y. 2017) (concluding the defendant satisfied its initial burden of showing that there is no dispute of material fact as to whether a product is defectively designed by pointing to a lack of evidence); DeMoss v. Norwalk Bd. of Educ., 21 F. Supp. 3d 154, 165 (D. Conn. 2014) (implicitly concluding that the defendant met its initial burden in moving for summary judgment on the plaintiff's equal protection claim by arguing that the plaintiff "ha[d] failed to show, or even plead that he was treated differently 'from others similarly situated'").

Here, Mr. Orlando argues, "[i]n order to present these defenses at trial, [ ] Kraft Heinz must present evidence from which a reasonable jury could find in its favor.  This it has not done."  See Pl.'s Mem. Supp. at 24.  The court does not understand why Mr. Orlando did not further elaborate his position.  Moreover, it is not clear whether Mr. Orlando moves on all twelve defenses or merely the four he emphasizes in his

Memorandum.  See id.  The court, therefore, agrees with the Kraft Heinz that Mr. Orlando has not met his initial burden.[22]

The court notes that, with respect to Kraft Heinz's seventh defense under the doctrine of laches, Kraft Heinz asserts that it is no longer pursuing this defense.  See Def.'s Opp. at 20 n.17.  Accordingly, the court grants Mr. Orlando's Motion for Summary Judgment with respect to Kraft Heinz's seventh defense.  Otherwise, his Motion as to the remaining defenses is denied.

2.    Category of Damages

Mr. Orlando moves for "partial summary judgment as to the categories of damages that will be available to him at trial."  See Pl.'s Mem. Supp. at 24–27.  When Mr. Orlando commenced suit, an employer in violation of the portion of section 31-51q at issue here was liable for "the full amount of gross loss of wages or compensation, with costs and such reasonable attorney's fees as may be allowed by the court."  See Conn. Gen. Stat. § 31-51q(b) (2022).  In 2023, the state legislature amended the statute so that a violative employer "shall be liable . . . for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages."  Conn. Gen. Stat. § 31-51q(b) (2023).  The

---

[22] In response to Kraft Heinz's Opposition, Mr. Orlando argues that the evidence Kraft Heinz cites is insufficient to prove its defenses of after-acquired evidence, unclean hands, or failure to mitigate.  See Pl.'s Reply at 14–16.  Given the conclusory nature of Mr. Orlando's argument in his Memorandum, the arguments in his Reply can only fairly be viewed as new arguments.  In other words, they cannot be fairly characterized as further elaboration or clarification of the arguments in his Memorandum.  Thus, the court deems such arguments waived.  See Cadoret v. Sikorsky Aircraft Corp., 323 F. Supp. 3d 319, 326 n.7 (D. Conn. 2018) (citing Knipe v. Skinner, 999 F.2d 708, 711 (2d Cir. 1993)).

parties dispute whether the amendment to section 31-51q pertaining to damages applies retrospectively to Mr. Orlando's case.  See id.; Def's Opp. at 22–25.

Under Connecticut law, absent a clear expression of legislative intent, statutory amendments affecting substantive rights are presumed to only apply prospectively, whereas those affecting procedural rights are presumed to apply retroactively.  See Conn Gen. Stat. § 55-3; D'Eramo v. Smith, 273 Conn. 610, 620–21 (2005).  "While there is no precise definition of either substantive or procedural law, it is generally agreed that a substantive law creates, defines and regulates rights while a procedural law prescribes the methods of enforcing such rights or obtaining redress.  D'Eramo, 273 Conn. at 621 (cleaned up and internal quotation marks omitted).  Although procedural statutes are presumed "to apply retroactively absent a clear expression of legislative intent to the contrary a statute which, in form, provides but a change in remedy but actually brings about changes in substantive rights is not subject to retroactive application."  See id. (cleaned up and internal quotation marks omitted).

Mr. Orlando posits that the 2023 amendment is procedural because it changes damages, which are remedial in nature.  See Pl.'s Mem. Supp. at 26; Pl.'s Reply at 17–18.  However, the amendment not only broadened the scope of compensatory damages available, it also contemplated the imposition of punitive damages, which are generally "awarded when the evidence shows a reckless indifference to the rights of others or an intentional and wanton violation of those rights[.]"  Harty v. Cantor Fitzgerald & Co., 275 Conn. 72, 92–93 (2005) (internal quotation marks and citations omitted).  As a result, the 2023 amendment effectively redefines the plaintiff's right by broadening his entitlement if he can prove beyond a preponderance of the evidence a reckless

27

indifference or an intentional and wanton violation.  In turn, the statute imposes a new obligation on the defendant by expanding the scope of its liability.[23]  Cf. Inv. Assocs. v. Summit Assocs., Inc., 309 Conn. 840, 698 (2013) (concluding section 52-598(c) concerning revival of judgment is not substantive because it did not impose new obligations on the defendant, e.g., "the amount of the judgment, the party to whom the defendant owes that obligation and the period for enforcing the judgment all remain the same").  Thus, the 2023 amendment cannot be said to "bear[ ] the hallmarks of a procedural statute, leaving the preexisting scheme intact and prescribing a method of enforcing rights or obtaining redress."  See Inv. Assocs. v. Summit Assocs., Inc., 309 Conn. 840, 870 (2013).  Because the 2023 amendment is likely substantive and, thus, does not presumably apply retroactively, Mr. Orlando's Motion for Partial Summary Judgment as to the category of damages available to him at trial is denied.

       C.       Motions to Seal (Doc. Nos. 107, 115)

       In relation to the Motions for Summary Judgment (Doc. Nos. 106 and 111), the parties have moved to seal various exhibits.  Kraft Heinz moves to seal Exhibits 5, 6, and 25 to its Motion for Summary Judgment, which contain confidential business information.  See Def.'s Mot. to Seal (Doc. No. 107).  Mr. Orlando moves to seal Exhibit

---

[23] Mr. Orlando notes that several courts have applied amendments to sections 31-68 and 31-72, impacting the remedies available to plaintiffs, retroactively.  See Pl.'s Mem. Supp. at 26–27.  However, those amendments are distinguishable from the 2023 amendment to section 31-51q.  Changes to sections 31-68 and 31-72 merely made the recovery double damages mandatory whereas previously, the imposition of double damages lay within the court's discretion.  Forrest v. Golub Corp., No. HHDCV146054790S, 2016 WL 6120671, at *3 (Conn. Super. Ct. Sept. 8, 2016) ("Thus, the court is now without discretion to consider an employer's bad faith, arbitrariness, or unreasonableness in awarding double damages.").

1—filed as Exhibit 5 to his Motion for Partial Summary Judgment—which contains Kraft Heinz's confidential business information.  See Pl.'s Mot. to Seal (Doc. No. 115).

Generally, this court will grant motions to seal or redact documents containing confidential or proprietary business information except where certain portions of a document are cited and relied upon by this court in its Ruling.  Based on First Amendment case law on public access, it is this court's view that the cited portions should remain unredacted and available on the public docket.

Accordingly, the court grants Mr. Orlando's Motion to Seal (Doc. No. 115) and grants in part and denies in part Kraft Heinz's Motion to Seal (Doc. No 107).  Kraft Heinz is ordered to file redacted versions of the documents that were cited in this Ruling; Kraft Heinz should, in turn, ensure that, to the extent the court cites portions of the documents in its Ruling, such excerpts should be unredacted.  The documents and portions of documents that this court has not cited may remain under seal.

V.   **CONCLUSION**

For the reasons stated above, the court grants in part and denies in part Kraft Heinz's Motion for Summary Judgment (Doc. No. 106) and grants in part and denies in part Mr. Orlando's Motion for Partial Summary Judgment (Doc. No. 111).  Kraft Heinz's Motion is granted as to Mr. Orlando's claim under section 31-51q of the Connecticut General Statutes based on Mr. Orlando's speech in the course of Kraft Heinz's 2022 investigation.  To the extent Mr. Orlando's claim under section 31-51q is premised on his statements made in 2021, while he campaigned for a seat on the Board of Education of Monroe, Connecticut, Kraft Heinz's Motion is denied.

Mr. Orlando's Motion is granted as to Kraft Heinz's affirmative defense of laches. The Motion is otherwise denied, including his Motion for Summary Judgment on his 2022 speech.

Further, the court grants Mr. Orlando's Motion to Seal (Doc. No. 115) and grants in part and denies in part Kraft Heinz's Motion to Seal (Doc. No. 107). Accordingly, Kraft Heinz is directed to refile redacted versions of exhibits to the extent the court cites or relies on them in this Ruling.

**SO ORDERED.**

Dated at New Haven, Connecticut this 27th day of September 2024.


  /s/ Janet C. Hall_____

Janet C. Hall
United States District Judge